IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TABATHA MICHELLE CUMMIN GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-151 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Tabatha Michelle Cummin Green appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.   BACKGROUND**

Plaintiff applied for DIB on October 17, 2011, alleging a disability onset date of July 12, 2011. Tr. ("R."), pp. 17, 209. The alleged onset date fell one month after Plaintiff quit her job as a school custodian because a pending change to her scheduled work hours conflicted with Plaintiff's ability to care for her adult disabled son. R. 43. Plaintiff was forty-one years old at her alleged disability onset date and was forty-two years old at the time the Administrative Law

Judge ("ALJ") issued the decision currently under consideration by the Court on November 23, 2012. R. 23, 27, 178. Thus, the disability decision covered a period of only approximately sixteen months.

Plaintiff applied for disability benefits based on her alleged impairments of having only one functioning kidney in stage IV of chronic kidney disease, a history of special education, non-insulin dependent diabetes mellitus, hypertension, anemia, and depression. R. 23, 220, 254. Plaintiff completed high school with special education, spent a short time in college, and prior to her alleged disability worked as a school custodian and fast food restaurant cashier. R. 37, 41-42, 44, 59, 212, 220.

The Social Security Administration denied Plaintiff's application initially, R. 108-11, and on reconsideration, R. 105. Plaintiff requested a hearing before the ALJ, R. 114-15, and the ALJ held a hearing on October 5, 2012. R. 32-80. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Daniel Lustig, a Vocational Expert ("VE"). Id. On November 23, 2012, the ALJ issued an unfavorable decision. R. 14-31.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of July 12, 2011. (20 C.F.R. § 404.1571 *et seq*.).

2. The claimant has the following severe impairments: chronic kidney disease, stage IV and anemia. (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) with additional limitations.[1] The claimant can lift twenty pounds occasionally and ten pounds frequently, stand and walk for a total of four hours, and sit for a total of six hours in an eight-hour workday. The claimant is limited to frequent climbing of ladders, ropes, and scaffolds; frequent balancing; and occasional stooping, kneeling, crouching and crawling. The claimant should avoid concentrated exposure to cold and heat and avoid even moderate exposure to hazardous machinery and heights. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including cuff folder, label pinker, and surveillance system monitor, all sedentary exertional level jobs. (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from July 12, 2011, through November 23, 2012 (the date of the ALJ's decision). (20 C.F.R. § 404.1520(g)).

R. 19-27.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly weigh the opinion of Plaintiff's treating nephrologist,

---

[1] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Mark Smith, M.D., and (2) the failure to properly analyze Dr. Smith's opinion led to the formulation of an improper RFC used in the hypothetical presented to the VE. See doc. no. 9 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 12.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the

4

Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Assigned Little Weight to the Cursory Opinions of Treating Nephrologist Mark Smith, M.D., Based On the Detailed Report of State Agency Consultant John Sadler, M.D., and the Record as a Whole.

Plaintiff's most recent relationship with treating nephrologist Dr. Mark Smith commenced on April 18, 2011, approximately fifteen months prior to the administrative hearing on October 5, 2012, with a referral for evaluation of increased creatinine. R. 283. Plaintiff saw Dr. Smith in years prior to 2011, but she switched doctors due to financial concerns, and details of that prior treatment relationship are not relevant.

During the course of this most recent treatment relationship, as the ALJ acknowledged, Dr. Smith regularly checked Plaintiff's creatinine levels and set a treatment plan for Plaintiff based on her stage IV chronic kidney disease that included medication and eventual dialysis at some point in the future, after further deterioration. R. 277-96.

Consistent with this treatment plan, on October 20, 2011, Dr. Smith wrote a one-paragraph, open letter stating that Plaintiff's kidney disease was not reversible and dialysis would be required in the near future. R. 277.

On July 18, 2012, by merely checking boxes on a letter provided by Plaintiff's counsel, Dr. Smith characterized as consistent with Plaintiff's medical condition and treatment, and Dr. Smith's own treatment observations, the allegations by Plaintiff of "fatigue and general weakness on a daily basis to a degree that pre[c]ludes her ability to engage and maintain activities of daily living without extended periods of rest . . . . " Dr. Smith also checked a box on the same letter stating that Plaintiff's kidney function continued to deteriorate. R. 309. Plaintiff argues the ALJ improperly discounted these July 2012 opinions by Dr. Smith. Plaintiff's argument is notably devoid of any specific medical findings or limitations imposed by Dr. Smith that contradicts the ALJ's RFC determination or the ALJ's finding that Plaintiff could perform the sedentary jobs identified. As discussed below, the ALJ properly assigned little weight to Dr. Smith's cursory opinions based on the detailed expert opinion of Dr. Sadler, a state agency consultant, and the record as a whole.

### 1. Weight Afforded to Opinions of Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th

6

Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Commissioner of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)). Furthermore, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). In certain circumstances, such as when state agency physicians review a complete case record which provides more detailed and comprehensive information than was available to a treating source, an opinion of a state agency physician may be entitled to greater weight than the opinion of a treating source. Id.

at *3.

### 2. The ALJ Properly Relied on the Comprehensive and Detailed Report by Consultative Examiner John Sadler, M.D.

In discounting Dr. Smith's opinion, the ALJ relied on the expert opinion of state agency consultant John Sadler, M.D., who conducted a thorough and sifting review of the evidence, when finding that Plaintiff could perform a limited range of light work and rejecting the cursory findings of Dr. Smith. R. 25. In particular, Dr. Sadler noted that although Plaintiff's symptoms might progress, during the limited time period under consideration for his disability review of July 12, 2011 to May 5, 2012 (the date he signed the report), Plaintiff had consistent test results and could perform most tasks normally. R. 96-102. In summarizing his findings, Dr. Sadler acknowledged Plaintiff's kidney disease and potential for dialysis in the future. R. 102. However, he also noted (1) no immediate plans for commencing dialysis; (2) creatinine levels below listing level; and (3) no findings of edema or anasarca. Id.

SSR 96-6p provides that Dr. Sadler's finding of fact regarding the nature and severity of Plaintiff's impairments must be treated as expert opinion evidence of a nonexamining source and that his opinion may be given greater weight than Dr. Smith's opinion because he reviewed more detailed and comprehensive information. SSR 96-6p, 1996 WL 374180, at *1, 3. Accordingly, the ALJ properly relied on Dr. Sadler's findings in discounting Dr. Smith's conclusory opinions and concluding, as did Dr. Sadler, (R. 102), that Plaintiff could perform a limited range of light work.

### 3. The ALJ Properly Rejected Dr. Smith's Opinions, and Plaintiff's Subjective Complaints, As Inconsistent with the Record as a Whole.

The ALJ also properly discounted Dr. Smith's conclusory opinions based on the record as a whole. R. 20, 23. In the course of doing so, the ALJ properly acknowledged and rejected,

based on substantial evidence, Plaintiff's subjective complaints about the limiting effects of her alleged pain, swelling, and fatigue. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (establishing three-part pain standard requiring: (1) evidence of underlying medical condition and either (2) objective medical evidence confirming alleged severity, or (3) objectively identified condition reasonably expected to cause claimed pain).

As the ALJ pointed out, Plaintiff's treating internist, Dr. James C. Sheppard, saw Plaintiff on January 3, 2012, just seven months prior to Dr. Smith's checking of the boxes on the legal letter on July 18, 2012. At that time, Dr. Sheppard reported that Plaintiff had normal muscle strength (5/5), good tolerance of treatment, and good symptom control with medication that Plaintiff testified did not cause her any side effects. R. 48-49, 302. Indeed, Plaintiff's own description of the reason for her visit that day was "to get di[s]ability papers filled out." R. 302. The notes from this visit with Dr. Sheppard are consistent with other evidence of Dr. Smith's successful management of Plaintiff's chronic kidney condition. Indeed, even Plaintiff's brief recounts the chronicling in Dr. Smith's office visit notes of generally conservative treatment with medication that, as Plaintiff herself testified, provided good symptom control. R. 24, 48; Pl.'s Br., pp. 7-11.

The ALJ also found compelling the testimony concerning Plaintiff's participation in a wide range of daily activities that included yard work, house chores, caring for an adult disabled son, shopping, attending church three times per week, watching television, reading, and using the computer.[2] R. 20, 23, 53-54, 228-32. Indeed, as the ALJ explained, Plaintiff's husband reported that she can work up to five hours outside and that she performs four hours of household chores

---

[2]Plaintiff's argument that the ALJ failed to consider Plaintiff needs assistance for shopping, (Pl.'s Br., p. 14), is unavailing in that Plaintiff testified she needs help shopping simply because her short stature makes it difficult to reach items on the shelf. R. 53.

9

daily. R. 230.  These reported activities stand in contrast to Plaintiff's assertions that pain and fatigue prevent her from working at the limited, light exertional level identified by the ALJ.

Moreover, as the ALJ explained, Plaintiff conceded at the administrative hearing that she quit her job in June of 2011 not because of her physical impairments but because of an unwanted change to her work schedule.  R. 44-45.  Plaintiff testified that her July 12, 2011 alleged onset date was based on a single hospital visit precipitated by "everything just starting to swell" on her, R. 45, but hospital records indicate she presented with a two-day history of sudden onset nausea and vomiting.  R. 266.  Edema was not noted, R. 264-76, and at an appointment with Dr. Smith on July 13, 2011, one day after her discharge from the hospital, Plaintiff was feeling well, had no edema in her extremities, and had maintained a relatively stable renal function.  R. 272, 281-82. Indeed, Dr. Smith characterized Plaintiff's hospital visit as "largely centered around IV fluids and antiemetics" for nausea and vomiting.  R. 281.  Relatedly, the ALJ properly found that Plaintiff's reports of significant edema are not supported by the record.  Dr. Smith's records do not support a finding of significant edema.  Even during visits when Plaintiff reported having edema, physical examination demonstrated no edema in Plaintiff's extremities.  R. 278.

In addition, the ALJ noted that when Plaintiff saw her treating physician on July 10, 2012, one year after her alleged onset date, she reported that she had been looking for a job "for months."  R. 23, 310.  Similar to the reason for quitting her job as a custodian in 2011 one month before her alleged onset date, Plaintiff's job search had been unsuccessful not because of physical limitations, but rather based on her limited availability due to caring for her adult disabled son.  R. 23-24, 43-44, 310.

In sum, the ALJ properly afforded "little weight" to Dr. Smith's opinion concerning Plaintiff's alleged disabling pain, fatigue, and edema associated with her admittedly chronic

10

stage IV kidney disease. Although Plaintiff's kidney disease is a serious medical condition that the record indicates is likely to deteriorate, for the limited time period under review of July 12, 2011 through November 23, 2012, the record as a whole does not support Dr. Smith's conclusory opinion on the severity of Plaintiff's condition and its impact on her ability to work. The ALJ provided substantial, explicit, and adequate evidence to discredit Dr. Smith's opinion such that it was properly afforded "little weight."

Finally, remand is not necessary merely because of the ALJ's mistaken attribution to Dr. Smith of the statement that Plaintiff's renal function had "slightly" worsened. R. 24, 298. Dr. Sheppard made this statement, not Dr. Smith, and he actually said that renal function had "slowly" worsened, not "slightly" worsened. Regardless of who made this statement, and regardless of whether the pace of renal function deterioration is slow or slight, the ALJ correctly found that Plaintiff's kidney disease had progressed to advanced Stage 4 and required treatment by medication rather than dialysis. The two mistakes are thus harmless typographical errors that do not require remand. See Majkut v. Commissioner of Soc. Sec., 394 F. App'x 660, 665 (11th Cir. 2010) ("[E]rroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard." (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).)

### B. The ALJ Properly Relied on the VE's Testimony.

Plaintiff also contends that because the ALJ allegedly erred in her consideration of Dr. Smith's opinion, she formulated an improper RFC for presentation to the VE. Pl.'s Br., pp. 19-20. As explained above in detail, the ALJ did not err in affording little weight to the opinion of Dr. Smith. In any event, the VE responded to the hypotheticals upon which the ALJ relied to

11

make his finding of "not disabled" based on assumptions that accounted for Plaintiff's limitations supported by substantial evidence in the record.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161.

Here, Plaintiff does not specify any alleged impairments or limitations that the ALJ purportedly omitted from the hypothetical presented to the VE. Pl.'s Br., pp. 19-20. The Court will not hazard a guess as to how, specifically, Plaintiff believes the hypotheticals presented to the VE and relied upon by the ALJ, R. 73-75, do not comprehensively reflect Plaintiff's characteristics. Nor does she point to any specific job requirement of the three sedentary, unskilled jobs identified by the VE that she cannot perform. Rather, she stakes her entire argument to the incorrect proposition that the ALJ improperly evaluated Dr. Smith's opinion.

In any event, the only time the VE opined that jobs were not available is when the characteristics involved unscheduled absentee days or breaks and being off task ten per cent of a work day, all characteristics the ALJ properly discredited. R. 76-77. The record reflects that the ALJ presented characteristics matching those of claimant, as supported by substantial evidence in the record, namely, exertional and non-exertional limitations encompassing

lifting, walking, sitting, climbing, balancing, stooping, kneeling, crouching, crawling, and exposure to extreme temperature and/or hazardous machinery and heights. Moreover, even though the ALJ concluded that Plaintiff could perform light work, the jobs ultimately identified by the VE and listed in the ALJ's opinion as available jobs were actually at a lower exertional level than light jobs.

In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63. Therefore, the ALJ's conclusion that there is work Plaintiff can perform in the national economy is supported by substantial evidence, and this issue forms no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of July, 2015, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
